IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**DAVID DEAN BUZZARD, Jr.,**

    **Petitioner,**

v.                                                                              **Case No. 3:20-cv-00600**

**UNITED STATES OF AMERICA**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is David Dean Buzzard, Jr.'s Petition for a Writ of Mandamus (ECF No. 3). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge and, by Standing Order, has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's request that the action be dismissed, (ECF No. 10), be **GRANTED**; that Buzzard's Petition, (ECF No. 3), be **DENIED**; that Buzzard's Motion for an Emergency Hearing, (ECF No. 12), be **DENIED** as moot; and that this action be **DISMISSED** and **REMOVED** from the docket of the Court.

**I.**     **Factual and Procedural Background**

On August 5, 2013, this Court found that Buzzard violated the terms of his supervised release and ordered that he serve a total of 36 months in federal prison following his service of a separate sentence imposed on him by the State of West Virginia.

(ECF No. 3 at 1). After being granted parole from his state sentence, on October 2, 2020, Buzzard was moved from the state prison at the Northern Correctional Facility ("NCF") into a separate on-site jail, the Northern Regional Jail ("NRJ"), to await transfer to a Federal Bureau of Prisons ("BOP") facility. (ECF No. 12 at 1). A recent search of the Inmate Locator Tool on the BOP website showed that Buzzard has still not been processed into federal custody. *See* https://www.bop.gov/inmateloc/.

Buzzard filed the instant petition for a writ of mandamus on September 11, 2020, prior to his transfer from the NCF to the NRJ. (ECF No. 3). He asks this court to issue an order compelling the United States Marshals Service to either transfer him to the Carter County Detention Center ("CCDC") in Grayson, Kentucky, or alternatively transfer him immediately to a BOP facility. (ECF No. 3 at 1, 3). According to Buzzard, detention in the NRJ presents a "substantial and unnecessary risk" that he could become infected with COVID-19, because "the [NRJ] accepts pre-trial detainees into the facility who have been recently arrested and potentially exposed to the virus." (*Id.* at 2). Buzzard asserts that the NRJ does not separate convicted state prisoners from convicted federal prisoners. Consequently, a new pretrial detainee, who has been exposed to the virus, could infect other pretrial detainees in his pod. If one of those infected inmates becomes convicted and is placed in Buzzard's pod, Buzzard will be exposed to the virus. (*Id.*). Buzzard reasons that the CCDC creates a safer environment for him because the "CCDC does not comingle their Federal inmates with State inmates." (*Id.*). Buzzard asks the Court to "recognize the exceptional circumstances" giving rise to his request and to acknowledge the United States Marshals Service's duty to "reasonably protect [him] from the risk of contracting this virus." (*Id.* at 4).

On September 16, 2020, the undersigned ordered Respondent to answer Buzzard's petition within 14 days, (ECF No. 5), and then later granted Respondent's motion to extend the deadline. (ECF No. 9). On October 8, 2020, Respondent filed its response, opposing Buzzard's petition and requesting that the Court deny it. (ECF No. 10 at 1). Respondent emphasizes the extraordinary nature of the writ of mandamus and asserts that the location of housing federal inmates is an inherently discretionary decision for which the writ would be inappropriate. (*Id.* at 2–3). Respondent also points out that the Court of Appeals for the Third Circuit recently declined to order changes in an inmate's custody location in the context of a motion for compassionate release due to the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison," arguing that a similar logic applies here. (*Id.* at 3–4) (internal quotations omitted) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

On October 13, 2020, Buzzard filed a motion seeking an emergency hearing. (ECF No. 12). He contends that he did not receive Respondent's answer to his petition, informs the Court that he had been transferred into the NRJ, and requests an emergency hearing in which he must be physically present to address the risk. (*Id.* at 1–2). On October 19, 2020, Buzzard filed his reply to Respondent's opposition to his petition. (ECF No. 15). In his reply, Buzzard clarifies his position, maintaining that he does not seek a writ of mandamus to dictate the place of his confinement but rather to compel the Marshals Service to "take reasonable measures to minimize the risk of petitioner contracting COVID-19." (*Id.* at 1). He also questions the applicability of *United States v. Raia* to the facts of his case, as his request is not for compassionate release but for transfer to a safer environment. (*Id.* at 1–2). Buzzard further adduces that because he is in custody and is restrained to act on his own behalf, Respondent owes him a duty to take "reasonable

measures to protect [him] from the risk of contracting COVID-19" by virtue of the "special relationship" created by his status as an incarcerated person. (*Id.* at 2). He again requests that this Court order the Marshals Service to transport him to a BOP facility, or to the CCDC, to await designation. (*Id.* at 2).

On October 29, 2020, Buzzard filed an affidavit in support of his earlier motion for an emergency hearing. (ECF No. 18). He alleges that the housing units at the NRJ, originally designed to accommodate only 16 inmates, are in fact housing about 40 inmates. (*Id.* at 1–2). He claims that maintaining distance between individuals to prevent the spread of COVID-19 is impossible with the overcrowding, and that the inmates are not given masks or other equipment to protect themselves from the virus. (*Id.* at 2). He further attests that all 40 inmates must share two telephones and two showers, and that disinfectants are not made available to inmates to sanitize these shared implements before use. (*Id.* at 2). He also claims that the majority of inmates in his unit at NRJ are recently arrested probation and parole violators, who are neither tested nor quarantined before being placed in the housing unit. (*Id.*). Emphasizing the insight he has gained through years of incarceration, he maintains that the NRJ is not reasonably safe while a facility like the CCDC or a federal prison would lessen his risk of exposure to COVID-19. (*Id.* at 2–3).

## II.     Standard of Review

Respondent does not identify the standard under which it seeks dismissal of Buzzard's petition; however, courts generally review motions seeking to dismiss petitions for a writ of mandamus under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Bldg. & Const. Trades Dep't, AFL-CIO v. Solis*, 600 F. Supp. 2d 25, 32 (D.D.C. 2009); *Lugo v. I.N.S.*, 950 F. Supp. 743, 745 (E.D. Va. 1997). As Respondent filed its response

concurrently with the request for dismissal, the response is most properly treated as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion for judgment on the pleadings applies the same standard of review as a motion to dismiss filed under Rule 12(b)(6).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings without converting the motion into one for summary judgment. (*Id.*)

This Court is required to construe *pro se* pleadings liberally, such as the one filed in this civil action. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the pleading must state sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City*

*of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

Buzzard asks this Court to issue a writ of mandamus. A writ of mandamus is an extraordinary writ that exists for the sole purpose of aiding courts in the exercise of their appellate jurisdiction and "in such cases as are already pending and wherein jurisdiction has been obtained on other grounds and by other process." *Gurley v. Superior Court of Mecklenburg,* 411 F.2d 586, 587 (4th Cir. 1969). Title 28 U.S.C. § 1361 provides that United States District Courts have original jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A federal court may only issue a writ of mandamus against an employee or official of the United States and may only command that employee or official "to perform a mandatory or ministerial duty, rather than one that is purely discretionary." *Ocean Breeze Festival Park v. Reich,* 853 F. Supp. 906, 915 (E.D. Va. 1994), *aff'd by Virginia Beach Policeman's Benevolent Association v. Reich*, 96 F.3d 1440 (4th Cir. 1996).

Additionally, for this Court to issue a writ of mandamus, three conditions must be satisfied. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (citing *Kerr v. United States Dist. Court for Northern Dist. of Cal.*, 426 U.S. 394, 403 (1976)). First, the petitioner must "have no other adequate means to attain the relief" requested; second, the petitioner must satisfy the burden of showing that he has a "clear and indisputable" right to the writ; and third, notwithstanding the first two conditions, the Court must be satisfied that the writ is appropriate under the circumstances. *Id.* at 380–81 (citations omitted).

Buzzard seeks an order compelling the BOP to take immediate custody of him from

his current location at the NRJ and transfer him to either a BOP facility or the CCDC. (ECF No. 3 at 3). He bases this request on what he perceives as the relatively high risk of COVID-19 exposure at the NRJ compared to a BOP facility, or the CCDC, due to the NRJ's practice of commingling inmates, overcrowding the housing units, and denying the inmates personal protective equipment and cleaning tools. (ECF No. 15 at 1). According to Buzzard, this causes him to face "an unnecessary and substantial risk of contracting COVID-19." (*Id.*).

This Court is aware of the challenges and risks faced by those in custodial environments during the COVID-19 pandemic. Nevertheless, this Court is not permitted to supplant the discretion of the Department of Justice in its selection of an inmate's place of imprisonment. Moreover, while the United States Marshals Service has a duty to "provide for the safe-keeping of any person arrested ... pending commitment to an institution," the Marshals Service is "authorized to contract with state-funded correctional facilities to house federal prisoners." *Russell v. United States*, No. 3:17-CV-77-TWP-DCP, 2018 WL 1475603, at *5 (E.D. Tenn. Mar. 26, 2018) (quoting 18 C.F.R. § 0.111(o)). "Courts have recognized that ... statutes and regulations provide the United States Marshals Service with broad authority to determine where to house its prisoners." *United States v. Espinoza-Arevalo*, No. 14-00332-02-CR-W-BP, 2015 WL 9598299, at *3 (W.D. Mo. Dec. 30, 2015) (citations omitted); *United States v. Bigham*, No. 14-CR-20676, 2016 WL 738045, at *2 (E.D. Mich. Feb. 25, 2016) (refusing the defendant's request for transfer from a county jail to a detention facility, noting that the defendant provided "no authority empowering a district court to direct the U.S. Marshals Service to house a criminal defendant at any specific location.").

Although Buzzard argues that he is not seeking the writ "to dictate the place of his

confinement," (ECF No. 15 at 1), that is in fact exactly what he seeks to do when he asks this Court to order his designation to the CCDC or to a BOP facility. The law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244 (1983) (holding that a prisoner has no constitutional right to be housed in a particular facility). The designation of a place of imprisonment rests exclusively with the Attorney General, and his designees, and is not constitutionally reviewable by this Court. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *see also* 18 U.S.C. § 3621(b) (granting broad discretion to the BOP to designate an inmate's place of imprisonment). In light of this governing law, the undersigned **FINDS** that Buzzard has failed to establish that he has a "clear and indisputable" right to be transferred from the NRJ to the CDCC or a federal prison at this time. *Cheney*, 542 U.S. at 380–81. On the contrary, Buzzard clearly does *not* have such a right in this case. *In re McCall*, 32 F. App'x 80 (4th Cir. 2002) (denying petition for writ of mandamus and finding "no clear right" to serve a sentence at a particular correctional institution); *see also In re Rice*, 33 F. App'x 108 (4th Cir. 2002) (same); *Giannolla v. Bureau of Prisons*, No. 5:02-CT-453-H, 2002 WL 32714319 (E.D.N.C. Aug. 16, 2002), *aff'd*, 77 F. App'x 676 (4th Cir. 2003) (holding that a writ of mandamus may not issue to transfer petitioner to home confinement); *Miller v. Lappin*, No. 7:09CV00012, 2009 WL 166873 (W.D. Va. Jan. 26, 2009) (same).

Relying on Fourth Circuit law, the Eastern District of Virginia denied a petition for a writ of mandamus filed by a state inmate seeking placement in BOP custody due to the danger he faced in state prison. *Sloan v. United States*, No. 3:01CV347, 2002 WL 32508911 (E.D. Va. Mar. 5, 2002), *aff'd sub nom. Sloan v. Kimbriel*, 63 F. App'x 174 (4th

Cir. 2003). There, the petitioner contended that state officials were "exposing him to a substantial risk of harm" and that "his life [was] in danger" after he assisted federal and state law enforcement agencies in an undercover drug investigation. *Id.* at \*1. The court found that the petitioner's claim did not meet the conditions required to issue the writ, because he failed to provide support for the proposition that he had a right to be taken into BOP custody. *Id.* Likewise, Buzzard offers no support for the contention that he has a right to the relief he seeks—namely, to be moved from the NRJ to the CCDC or a BOP facility. While it is possible that a different environment may reduce his risk of exposure to COVID-19, Buzzard cannot dictate when he is moved or where he is housed *even if* another facility is safer.

Furthermore, the undersigned **FINDS** that a writ of mandamus may not issue here because, in this case, the writ is not the sole "adequate means to attain the relief" Buzzard seeks. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004). Insofar as Buzzard requests the writ to compel the Marshals Service to "take reasonable measures to minimize the risk" of exposing him to COVID-19, (ECF No. 15 at 1), Buzzard is correct that his incarceration puts him in a "special relationship" with prison officials, which triggers a duty to assume responsibility for his safety and well-being. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (citing *Estelle v. Gamble*, 42 U.S. 97 (1976)). Buzzard has a right to be housed in conditions that meet the Constitution's minimum standards. The Eighth Amendment protects inmates from cruel and unusual punishments. Prison officials violate an inmate's Eighth Amendment rights and the Fourteenth Amendment's due process clause when they fail to provide for the basic human needs of those in custody, including their reasonable safety. *Id.*; *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (discussing the standard for cruel

and unusual punishments in custodial environments). However, if Buzzard wishes to challenge the constitutionality of the conditions to which he is subjected at the NRJ, he must do so through an action pursuant to 42 U.S.C. § 1983, which provides recourse for those whose Constitutional or statutory rights were violated by a State actor. *See generally Anderson*, 877 F.3d 539 (challenging the constitutionality of county sheriff's deputies "deliberate indifference" to jail inmate's health and safety). Buzzard must file such an action in the judicial district in which he is housed.

As Buzzard's claim does not meet the first two conditions that would allow this Court to issue a writ of mandamus, it is unnecessary for the Court to consider the third condition. *Cheney*, 542 U.S. at 380. Therefore, the undersigned **FINDS** that Buzzard's petition for a writ of mandamus should be denied. Further, because the merits of Buzzard's claim have been fully addressed herein, the undersigned **FINDS** that Buzzard's motion for an emergency hearing, (ECF No. 12), should be denied as moot.

### IV.   Proposal and Recommendations

The undersigned respectfully **PROPOSES** that the United States District Judge confirm and accept the foregoing findings and **RECOMMENDS** that that Respondent's request that the action be dismissed, (ECF No. 10), be **GRANTED**; that Buzzard's Petition, (ECF No. 3), be **DENIED**; and that Buzzard's Motion for an Emergency Hearing, (ECF No. 12), be **DENIED** as moot and removed from the docket of the Court.

The plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Buzzard shall have fourteen days (filing of objections) and three days (if received by mail) from the

date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the plaintiff and counsel of record.

**FILED:** November 13, 2020

Cheryl A. Eifert
United States Magistrate Judge